

**SIGNED this 29 day of August, 2014.**

_____
**John T. Laney, III
Chief United States Bankruptcy Judge**

**UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | | |
|---|---|---|
| In re: | * | Chapter 7 |
| FMB BANCSHARES, INC, | * | Case Number: 14-70716-jtl |
| | * | |
| Debtor, | * | CONTESTED MATTER |
| | * | |
| FMB BANCSHARES, INC, | * | |
| | * | |
| Movant, | * | |
| Vs. | | |
| | * | |
| TRAPEZA CDO XII, LTD., | * | |
| | * | |
| Respondent. | * | |

**MEMORANDUM OPINION**

This matter is before the Court on Debtor, FMB Bancshares, Inc.'s, Motion to Dismiss the Involuntary Chapter 7 Petition (the "Motion") filed by Trapeza CDO XII, LTD ("Trapeza"). The Court heard oral arguments on the Motion on July 30, 2014, in Valdosta, Georgia. Appearing at the hearing were counsel and representatives of the Debtor, Trapeza, Wilmington

1

Trust Company, Farmers and Merchants Bank, and the FDIC. At the conclusion of the hearing, the Court took the matter under advisement. The Court has carefully considered all the pleadings and briefs, the parties' oral arguments, and the applicable statutory and case law. For the reasons set forth below the Court will deny the Debtor's Motion to Dismiss.

## Background

The Debtor, FMB Bancshares, Inc. ("FMB Holdco") is a Georgia "bank holding company" headquartered in Lakeland, Georgia. FMB Holdco was formed in 1984. As a "bank holding company" it is subject to the supervision and regulation of the Board of Governors of the Federal Reserve System (the "Federal Reserve") and the Georgia Department of Banking and Finance (the "Commissioner"). Farmers and Merchants Bank (the "Bank"), is a full service community bank headquartered in Lakeland, Georgia. The Bank was founded in 1907 and has a total of six branches, all of which are located in Georgia. The Bank has approximately $566,000,000 in total assets, and is a wholly owned subsidiary of FMB Holdco. Like FMB Holdco, the Bank is also subject to regulation by the Federal Reserve and the Commissioner. In addition, the Bank is also subject to regulation by the Federal Deposit Insurance Corporation (the "FDIC").

Trapeza is a corporate entity incorporated under the laws of the Cayman Islands. Trapeza's relationship with FMB Holdco is the result of Trapeza's investment in FMB Preferred Trust I ("FMB Trust"), a Delaware statutory trust that is also a subsidiary of FMB Holdco. Trapeza's investment in FMB Trust arises out of its ownership of $12,000,000 of the FMB TruPS.[1] Wilmington Trust Company (the "Trustee") is trustee under the Amended Trust

---

[1] TruPS are preferred equity securities issued by a statutory trust in order to raise capital for the parent bank holding company. TruPS is discussed in greater detail later in the opinion.

Agreement entered by FMB Holdco in connection with the creation of FMB Trust and the issuance of the FMB TruPS.

### i. *Overview of TruPS*

Federally insured banks and their holding companies, such as the Bank and FMB Holdco, are required to maintain certain minimum levels of "Tier 1" capital. These levels are mandated and overseen by the FDIC and the Federal Reserve. TruPS were created as a way for bank holding companies to access Tier 1 capital at attractive rates by issuing very long-term, deferrable, interest-only securities with equity like features. To achieve favorable tax treatment, a bank holding company does not issue the TruPS directly. Instead, a bank holding company forms a wholly-owned trust subsidiary, and that trust issues preferred equity securities—the TruPS—to investors. Concurrent with the issuance of the TruPS, the subsidiary trust purchases junior subordinated notes issued by the bank holding company.

The notes constitute the sole asset of the subsidiary trust. The terms of the TruPS mirror the terms of the junior subordinated notes, whereby the bank holding company is to make payment of principal and interest to the subsidiary trust pursuant to the notes, and the trust in turn uses those funds to make payments to the holders of the TruPS. The bank holding company then invests the funds from the sale of the junior subordinated notes in its operating bank in order to maintain the required minimum level of Tier 1 capital. An important feature of the junior subordinated notes, and consequently the TruPS, is an absolute right of the obligor to elect to defer all payments on the notes for up to five consecutive years.[2] This payment deferral period is

---

[2] This deferral period is stated as 20 consecutive calendar quarters in the notes.

designed to allow the holding company and subsidiary bank to withstand any economic recessions or misfortune they may face during the long life of the junior subordinated notes.

    *ii.    Structure of FMB Trust.*

The FMB Trust was formed in 2006 by FMB Holdco and Wilmington Trust Company (the "Trustee").[3] The FMB Trust was created in order to facilitate FMB Holdco's access to capital via TruPS. To that end, FMB Trust issued securities to investors in the amount of $12,000,000—the FMB TruPS. The proceeds from the sale of the FMB TruPS were then paid to FMB Holdco by FMB Trust. In exchange, FMB Holdco issued unsecured junior subordinated deferrable interest notes ("the Notes") in favor of the FMB Trust. The Notes were issued pursuant to the terms of the Junior Subordinated Indenture (the "Indenture"). The principal amount of the Notes is $12,000,000 with a maturity date set in 2036. Under the terms of the Indenture, FMB Holdco is to pay interest each quarter to FMB Trust, and in turn FMB Trust is to pay dividends each quarter to the holders of the FMB TruPS. As with all TruPS, FMB Holdco and FMB Trust are permitted to defer interest payments for up to five years, during the term of the Notes.

Trapeza acquired all of the FMB TruPS issued by FMB Trust. Accordingly, the FMB TruPS entitles Trapeza to receive quarterly distributions from FMB Trust. However, Trapeza's right to receive payments is subject to FMB Holdco's right to defer interest payments to FMB Trust under the terms of the Indenture. In addition, Trapeza's right to receive distributions from

---

[3] FMB Trust was formed pursuant to the Delaware Statutory Trust Act, 12 Del. C. § 3801, *et seq.*, by the entry of a Trust Agreement between FMB Holdco and Wilmington Trust Company dated November 14, 2006. The Trust agreement was subsequently amended on November 17, 2006. Therefore, it is the Amended Trust Agreement, dated November 17, 2006, that is pertinent to this action.

FMB Trust is guaranteed by FMB Holdco pursuant to the terms of a guaranty agreement entered between FMB Holdco and the Trustee.

      *iii.    Economic Decline and Prompt Corrective Action*

Like many financial institutions, the Bank experienced the adverse impact of the financial recession that struck this country. Beginning in 2008 the Bank saw a drastic decrease in its revenues. In fact, in 2009 the Bank experienced a net loss of approximately $13,600,000.[4] As a result, the Bank was pushed to the brink of collapse. For that reason the Bank has operated for the last five years subject to a federally mandated rehabilitation program known as "Prompt Corrective Action." The Bank's participation in this program is ongoing and will continue until the Bank and FMB Holdco are considered financially sound by their federal regulators. As part of its participation in the Prompt Corrective Action program, the Bank is required to maintain a minimum capital cushion and if it fails to do so it is subject to increased monitoring and restrictions.  Pursuant to Prompt Corrective Action the Bank is currently prohibited from making any distributions to FMB Holdco.

As a bank holding company, rather than an FDIC insured bank, FMB Holdco is not directly subject to Prompt Corrective Action, but it is still subject to regulation by the Bank's regulators via the "source of strength doctrine," which is codified at 12 U.S.C. § 1831o-1 and 12 CFR 225.4(a) of the Federal Reserve's  regulations. Essentially, the "source of strength" doctrine requires that FMB Holdco support the Bank's obligation to increase its capital cushion to minimally required levels. On November 11, 2009, as part of its support obligation, FMB Holdco was required to enter into a written agreement (the "Federal Reserve Agreement") with the

---

[4] FMB Exhibit 3 (chart depicting revenues of FMB Holdco and the Bank).

5

Federal Reserve Bank of Atlanta and the Commissioner. The Federal Reserve Agreement provided that FMB Holdco and its nonbank subsidiaries, such as FMB Trust, shall not make any distributions related to subordinated debentures or TruPS without the prior written approval of the Federal Reserve Bank of Atlanta, the Federal Reserve, and the Commissioner.

In October 2012, the FDIC required the Bank to submit a capital restoration plan (the "Capital Plan"), which described the Bank's plan to increase its capital cushion. FMB Holdco was required to guarantee the Bank's performance under the Capital Plan. Accordingly, in January 2013, FMB Holdco entered into a Capital Maintenance Commitment and Guaranty (the "Capital Guaranty"). The Capital Guaranty may be enforced by either the FDIC or the Bank. Pursuant to the Capital Guaranty, should the Bank fail to comply with the terms of the Capital Plan, FMB Holdco must pay the Bank the lesser of five percent (5%) of the Bank's total assets or an amount necessary to bring the Bank into compliance. The Bank is currently in default of the Capital Plan. As a result, under the terms of the Capital Guaranty FMB Holdco is currently obligated to pay approximately $30,000,000 to the Bank in order to cure the default.

    *iv.*    *FMB Holdco's Default*

Beginning on March 30, 2009, and continuing for each consecutive quarter, FMB Holdco elected to defer payments under the Notes to FMB Trust. Under the terms of the Notes, FMB Holdco is able to defer payments under the Notes for a maximum of five years. In January 2014, FMB Holdco sent the Trustee a request asking it to waive the expiration of the deferral period and begin a new five year deferral period.  In its request, FMB Holdco cited the regulatory restrictions and its lack of funds as the reasons why it could not make any payments to FMB

6

Trust at the expiration of the deferral period. The Trustee did not respond to FMB Holdco's request and on March 30, 2014, FMB Holdco went into default on the Notes.

On April 7, 2014, Trapeza, acting through its trustee, The Bank of New York Mellon, provided FMB Holdco and the Trustee with written notice that it was accelerating the Notes and that all principal and interest under the Notes was due immediately. Although there is not a direct contractual relationship between Trapeza and FMB Holdco, Trapeza cites Section 6.10(a) of the Amended Trust Agreement as giving it authority to accelerate the Notes.

In summary, Trapeza is claiming that because it is a holder of the TruPS, FMB Holdco is directly liable to it for all amounts due and payable by FMB Holdco to FMB Trust under the terms of the Notes. On the other hand, FMB Holdco argues that it is legally barred from making any payments to FMB Trust because the Federal Reserve Agreement, Prompt Corrective Action, and the Capital Plan prohibit it from making any payments on the Notes without prior approval of its regulators. FMB Holdco does not anticipate receiving such approval because the capital levels of the Bank are not at the required minimum levels. Additionally, FMB Holdco claims that Trapeza has limited contractual rights to seek payment directly from FMB Holdco, and those rights do not include the right to file an involuntary bankruptcy petition against FMB Holdco.

**Discussion**

FMB Holdco filed the Motion seeking to dismiss the Involuntary Chapter 7 Bankruptcy Petition pursuant to Federal Rule of Civil Procedure 12(b)(6), which is made applicable to involuntary bankruptcy cases by Federal Rule of Bankruptcy Procedure 1011(b).[5] FMB Holdco argues that the petition fails to state a claim under Fed. R. Civ. P. 12(b)(6), because it does not

---

[5] Fed. R. Bankr. P. provides that in an involuntary bankruptcy case "[d]efenses and objections to the petition shall be presented in the manner prescribed by Rule 12 F.R.Civ.P . . ."

7

meet the requirements of 11 U.S.C. § 303(b) and that the contractual documents do not grant Trapeza the right to commence an involuntary bankruptcy case. Alternatively, FMB Holdco also argues that the Petition should be dismissed pursuant to 11 U.S.C. § 305, which allows a bankruptcy court to abstain from exercising jurisdiction in certain circumstances when the interests of the creditors and the debtor would be better served by dismissal.

Accordingly, FMB Holdco's motion rests on the Court's determination of three central issues: (1) Do Trapeza's limited contractual rights against FMB Holdco include the right to institute an involuntary case; (2) Is Trapeza a proper creditor under § 303(b); and (3) is abstention under § 305 proper?

    *i.    Does Trapeza Have Standing To File The Petition?*

The terms of the Indenture and Amended Trust Agreement provide that following an event of default, the holders of the TruPS may enforce their rights against FMB Holdco directly. However, the right of a holder of TruPS, such as Trapeza, to take direct action against FMB Holdco is limited to certain circumstances set forth in the Indenture and Amended Trust Agreement. Specifically, Section 5.8 of the Indenture provides that Trapeza,

> Shall have the right, upon the occurrence of an Event of Default described in Section 5.1(a), Section 5.1(b) or Section 5.1(c), to institute a suit directly against [FMB Holdco] for enforcement of payment to [Trapeza] of principal of and any premium and interest (including any Additional Interest) on the Securities having a principal amount equal to the aggregate Liquidation Amount of the [TruPS] held by [Trapeza].[6]

Likewise, Section 6.10(b) of the Amended Trust Agreement provides,

> For so long as any [TruPS] remain Outstanding, to the fullest extent permitted by law and subject to the terms of this Trust Agreement and the Indenture, upon a Note Event of Default. . . , any Holder of [TruPS] shall have the right to institute a

---

[6] Indenture, § 5.8

proceeding directly against [FMB Holdco], pursuant to Section 5.8 of the Indenture.[7]

There is no dispute between the parties that an event of default occurred on March 30, 2014, when FMB Holdco failed to make the outstanding interest payments due at the end of the five year deferral period. Additionally, Trapeza properly notified FMB Holdco that it was exercising its rights under Section 6.10 of the Amended Trust Agreement and accelerating the debt owed by FMB Holdco. Therefore, whether Trapeza has standing under the Indenture and Amended Trust Agreement rests on whether an involuntary bankruptcy is a permitted means of enforcement under the Indenture and Amended Trust Agreement.

I believe it is. The Indenture and Amended Trust Agreement allow Trapeza to bring a "suit . . . for enforcement of payment" against FMB Holdco.[8] Neither the Indenture nor the Amended Trust Agreement define "suit." Therefore, we must look outside the contract to determine the meaning of the term. According to Black's Law Dictionary a "suit" is "[a]ny proceeding by a party or parties against another in a court of law." *Black's Law Dictionary* 1663 (10th ed. 2014). Although it appears the Eleventh Circuit has not addressed the issue of whether an involuntary bankruptcy petition is a "suit . . . for enforcement" of payment, Courts outside the Eleventh Circuit have addressed the issue.

In *In re Federated Group, Inc.*, the Ninth Circuit interpreted an indenture provision similar to Section 5.8 of the Indenture as allowing a creditor to enforce its right to payment by instituting an involuntary bankruptcy proceeding. 107 F.3d 730, 732 (9th Cir. 1997)

---

[7] Amended Trust Agreement, § 6.10(b).
[8] Indenture § 5.8, Amended Trust Agreement, § 6.10(b) (stating that Trapeza may exercise any rights available under § 5.8 of the Indenture).

(finding that an involuntary petition was properly filed because creditors where the holders of qualified claims under an indenture that granted them an absolute right to payment and the right to "institute suit for the enforcement of . . . payment"). Similarly, the court in *In re Envirodyne Industries, Inc.*, found that an involuntary bankruptcy may be properly construed as a suit to enforce the payment of past due interest payments. 174 B.R. 986, 996 (Bankr. N.D. Ill. 1994). I agree with these courts and find that an involuntary bankruptcy petition may be properly construed as a "suit . . . for enforcement of payment."

In addition, FMB Holdco argues that because another section of the Indenture vests the Trustee with broader enforcement rights than those granted to the holders of the TruPS, such as Trapeza, that this places an additional limit on the enforcement remedies available to Trapeza. Section 5.3 of the Indenture allows the Trustee to take "such appropriate judicial proceedings as the Trustee shall deem most effectual to protect and enforce any such rights."[9] Additionally, Section 5.7 of the Indenture grants the Trustee the right to "institute any proceeding, judicial or otherwise . . . for the appointment of a custodian, receiver, assignee, trustee, liquidator, sequester (or other similar official) or for any other remedy. . ."[10] FMB Holdco is correct in its assertion that Sections 5.3 and 5.7 vest broad enforcement powers in the Trustee. However, the granting of broad powers on the Trustee is not a limit on enforcement rights specifically granted to holders of the TruPS, such as Trapeza, in Section 5.8. Accordingly, the Court finds that Trapeza has standing under the Indenture and Amended Trust Agreement to file an involuntary bankruptcy petition.

---

[9] Indenture, § 5.3
[10] Indenture, § 5.7

  *ii. Is Trapeza a Proper Creditor Under Section 303(b)?*

  Section 303(b) of the Bankruptcy Code allows a creditor to place a debtor into an involuntary bankruptcy in certain situations. Pursuant to § 303(b) an involuntary bankruptcy case may be commenced by a petitioning creditor under either subparagraph (1), "by three or more entities, each of which is . . . a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount," or subparagraph (2) if there are fewer than twelve such holders, excluding employees and insiders, "by one or more of such holders." For the purposes of § 303, "such holders" refers to those creditors holding claims that are "not contingent as to liability" or "the subject of a bona fide dispute as to liability or amount." Additionally, § 303(b) requires the petitioning creditors under subparagraph (1) or a sole petitioning creditor under subparagraph (2), have at least $15,325.00 in qualifying claims. Since Trapeza is the sole petitioning creditor, § 303(b)(2) is applicable to the instant matter.

  The petitioning creditor bears the burden of establishing that it is a qualified creditor under § 303(b). *In re DSC, Ltd.*, 486 F.3d 940, 944 (6th Cir. 2007); *In re Bimini Island Air, Inc.*, 370 B.R. 408, 412 (Bankr. S.D. Fla. 2007). A qualified creditor is one whose claim is not contingent as to liability or subject of a bona fide dispute. 11 U.S.C. § 303(b); *see also In re Brooklyn Resource Recovery*, 216 B.R. 470, 478 (Bankr. E.D.N.Y. 1997) (citing *In re Better Care, Ltd.*, 97 B.R. 405, 418 (Bankr. N.D. Ill. 1989) (holding that the burden is on the petitioning creditor to show that it is the holder of a claim that is not contingent or the subject of a bona fide dispute as to liability or amount.)). Therefore, Trapeza bears the burden of establishing that it is the holder of a claim that is not "contingent" nor "the subject of a bona fide dispute as to liability or amount." 11 U.S.C. 303(b)(2). Neither FMB Holdco nor Trapeza claim the debt is the subject

11

of a bona fide dispute. For that reason, the Court will only address the issue of whether the debt owed by FMB Holdco is "contingent" within the meaning of § 303(b).

"Although the Bankruptcy Code does not define the term contingent, a claim is 'contingent' within the meaning of § 303(b) when the debtor's obligation to pay does not come into being until the happening of some future event and that event was within the contemplation of the parties at the time their relationship originated." 2 Collier on Bankruptcy ¶ 303.10 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). Put another way, a claim is contingent if "an alleged debtor's legal duty to pay does not come into existence until triggered by the occurrence of an extrinsic event and such extrinsic event or occurrence was one that was reasonably contemplated by the parties at the time the event giving rise to the claim occurred." *In re Rosenberg*, 414 B.R. 826, 844 (Bankr. S.D. Fla. 2009).

A classic example of a claim that is contingent as to liability is that of a guarantor of payment where the obligation of the guarantor remains contingent until it is clear that the principal obligator is unable to pay. Collier on Bankruptcy ¶ 303.10. Another example of a contingent debt is where a debtor owes a sales agent commission only if potential purchasers actually buy the goods. *Id*. In such a scenario, the debtor would only be liable for the commissions once the sales were made. Therefore, its obligation is "contingent" upon the sale. On the other hand, a claim is not "contingent as to liability" when "all events have occurred which allow a court to adjudicate a claim and determine whether or not payment should be made." *In re Taylor &* Associates, LP, 193 B.R. 465, 473 (Bankr. E.D. Tenn. 1996) (*citing In re Longhorn 1979-II Drilling Program*, *L.P.*, 32 B.R. 923, 927 (Bankr. W.D. Okla. 1983)), *remanded on other grounds*, *In re Taylor & Associates, L.P.*, 249 B.R. 431 (E.D. Tenn. 1997).

At that point, "the contingency is applicable only to payment and is only a condition of payment." *Id.* Thus, a claim is not contingent merely because the debtor lacks the ability to pay.

Here, FMB Holdco claims that its obligations to Trapeza under the TruPS are "contingent as to liability." In support of that claim FMB Holdco argues that its obligations to Trapeza are "contingent" because FMB Holdco is prohibited by Prompt Corrective Action, the "source of strength" doctrine, and the Federal Reserve Agreement from making any payments on the Junior Subordinated Notes and consequently on the TruPS. FMB Holdco argues that the "triggering event" which would give rise to its liability to pay the TruPS is the fulfilment of its obligations under the Federal Reserve Agreement and obtaining permission from its regulators to make distributions. Until such a release, FMB Holdco maintains that its obligations to Trapeza pursuant to the Indenture and the TruPS are "contingent."

I do not agree. FMB Holdco's argument concerns its *ability* to pay, rather than its *legal duty* to pay. FMB Holdco has a present legal obligation to pay Trapeza under the Notes and the FMB TruPS because all "triggering" events have occurred. The terms of the Notes provide that FMB Holdco is to make quarterly interest payments to FMB Trust. In turn, FMB Trust is to make quarterly distributions to the holders of the FMB TruPS. Trapeza, as a holder of the FMB TruPS is entitled to receive a quarterly distribution from FMB Trust. However, FMB Trust's right to receive payment on the Notes is subject to FMB Holdco's absolute right to defer payments under the Notes for a period of up to five years. In March 2009, FMB Holdco chose to defer those payments. The five year deferral period expired on March 30, 2014. On that date FMB Holdco went into default on the Notes.

As we previously established, Trapeza has rights under the Amended Trust Agreement and Indenture to seek payment directly from FMB Holdco. FMB Holdco does not dispute that it is in default on the Notes, only that its debt to Trapeza is contingent because FMB Holdco is legally barred from making any payments to FMB Trust or Trapeza under the terms of the Federal Reserve Agreement. However, FMB Holdco's inability to pay, be it the result of the Federal Reserve Agreement or FMB Holdco's lack of funds, does not make its debt to Trapeza "contingent as to liability" within the meaning of § 303(b).

For the purposes of 303(b) a claim is "contingent" when the debtor's obligation to pay does not arise until the happening of some future triggering event. *See In re Rosenberg*, 414 B.R. at 844. Here, FMB Holdco's direct obligations to Trapeza under the Amended Trust Agreement and Indenture were not enforceable unless FMB Holdco defaulted on the Notes or there was a default on the TruPS. That is precisely what happened. Once the default occurred, the direct obligation was "triggered" and FMB Holdco was liable to Trapeza for any amount due to FMB Trust under the Notes.  The fact that FMB Holdco entered into an agreement with its regulators after it agreed to the terms of the Indenture does not supersede Trapeza's right to enforce the terms of the Indenture and seek payment directly from FMB Holdco. FMB Holdco is asking the Court to allow it to forgo one contractual obligation in favor of another, and to hold it harmless for that breach. The Court will not choose one contract over another when FMB Holdco is legally obligated under both. FMB Holdco's inability to satisfy its obligations to Trapeza does not affect its duty to do so or render those obligations "contingent."

  *iii.* Section 305 Abstention

Finally, FMB Holdco moves for discretionary abstention under 11 U.S.C. § 305(a). Section 305(a) of the Bankruptcy Code provides that after notice and a hearing a court "may dismiss . . . or suspend" an involuntary bankruptcy case at any time if "the interest of creditors and the debtor would be better served by such dismissal or suspension." 11 U.S.C. § 305(a)(1). Abstention is an extraordinary measure and should only be exercised in unusual situations. *In re Kennedy*, 504 B.R. 815, 828 (Bankr. S.D. Miss. 2014); *In re First Financial Enterprises, Inc*, 99 B.R. 751, 754 (Bankr. W.D. Tex. 1989). "The party seeking abstention bears the burden of proof and it is substantial. To carry this substantial burden, the party seeking abstention must show that the court's voluntary refusal to exercise jurisdiction better serves both the debtor and [the] creditors." *In re Kennedy*, 504 B.R. at 828 (internal citations omitted).

The Eleventh Circuit has not directly addressed the issue of abstention under § 305.[11] However, courts that have addressed abstention under § 305 consider several factors, including: (1) whether another forum is available or there is already a pending action in another court; (2) whether the creditor and debtor are actively engaged in an out of court workout; (3) the purpose for which bankruptcy jurisdiction has been sought; (4) whether the bankruptcy will unnecessarily interfere with state or federal regulatory schemes; and (5) the effect the bankruptcy proceeding will have on the debtor's business *See In re Kennedy*, 504 B.R. at 828; *In re Axl Industries, Inc.*, 127 B.R. 482, 485 (S.D. Fla. 1991); *In re First Financial Enterprises, Inc*, 99 B.R. at 754. However, these factors are not exhaustive and courts routinely employ a myriad of other factors

---

[11] This is perhaps a result of a bankruptcy court's decision to abstain under § 305 being only appealable to the district court. Section 305(c) provides that "An order under subsection (a) of this section dismissing a case . . . or decision not so to dismiss . . . is not reviewable by . . . the court of appeals . . . or by the Supreme Court of the United States." The Eleventh Circuit has found this section to only authorize appeal of a § 305 decision to the district court. *Goerg v. Parungao (In re Goerg)*, 930 F.2d 1563 (11th Cir. 1991).

in determining whether abstention under § 305 is proper. *See e.g. In re Spade*, 258 B.R. 221, 230 (Bankr. D. Colo. 2001); *In re Kennedy*, 504 B.R. at 828; *In re Axl Industries, Inc.*, 127 B.R. at 485.

Additionally, some courts have acknowledged that abstention may be appropriate in situations where the bankruptcy action is essentially a two-party dispute, provided the petitioning creditor can obtain adequate relief in a non-bankruptcy forum. *In re Kennedy,* 504 B.R. at 829; *In re Axl Industries, Inc.*, 127 B.R. at 485. However, § 303(b)(2) specifically envisions two party dispute situations because in certain situations it allows a single creditor holding a claim in excess of $15,325 to commence an involuntary bankruptcy case, so long as the claim is not contingent as to liability or subject to a bona fide dispute. 11 U.S.C. § 303(b)(2) (stating an involuntary petition may be commenced "by *one* or more [creditors]") (emphasis added); *In re Kennedy*, 504 B.R. at 829. Moreover, the Court recognizes that these are merely factors for a court to consider and no one factor standing alone represents a threshold issue that requires abstention. It is at the discretion of the court to weigh each factor in reaching its decision.

Here, abstention under § 305(a) is not appropriate. FMB Holdco moves this Court to abstain from exercising jurisdiction because (1) allowing the case to proceed would cause excessive interference and entanglement with FMB Holdco and the Bank's regulators, (2) bankruptcy is not in the best interest of FMB Holdco or Trapeza, and (3) this case is essentially a "two-party" dispute that would be more appropriately resolved in a court of general jurisdiction. I do not agree and will address each argument in turn.

    a. Excessive Government Entanglement

First, FMB Holdco argues that allowing the case to proceed will cause unnecessary interference with the regulatory schemes that FMB Holdco and FMB Bank are currently operating under. In support, FMB Holdco relies on the case of *In re First Financial Enterpirses, Inc.,* 99 B.R. 751. In that case the Bankruptcy Court for the Southern District of Texas decided to abstain from exercising jurisdiction over a voluntary Chapter 11 petition filed by a parent holding company because the court found that the petition had been filed in "an attempt by the Debtor and its sole shareholder to halt the state court receivership of the debtor's subsidiary insurance companies," which themselves were not eligible for bankruptcy. *Id.* at 755. In *In re First Financial Enterprises*, the state appointed receiver of the subsidiary insurance companies was already involved in hotly contested state court litigation against the sole shareholder of the parent holding company, and the proposed plan would call for the inclusion of all assets and creditors of the ineligible subsidiaries within the umbrella of its Chapter 11 case. *Id.* at 754-755. This was intended to halt the state court receiverships. *Id.* In effect, the proposed plan would end the state court litigation against the sole shareholder of the parent holding company.

Here, neither FMB Holdco nor the Bank is in a state court receivership. In fact, there is not any state or federal court litigation, outside of this bankruptcy action, currently pending between the parties. Unlike the holding company in *In re First Financial Enterprises* it does not appear to the Court that Trapeza is attempting to accomplish through this bankruptcy what it could not accomplish through litigation in another court. In fact, FMB Holdco acknowledges that Trapeza could seek to enforce its rights in another court. The holding company in *In re First Financial Enterprises*, sought to halt a state court receivership that was already in place by placing the parent holding company in bankruptcy, a remedy that was not available to the

17

subsidiary insurance company. Trapeza has not attempted to circumvent a state court action and has simply chosen what it feels is the best alternative.

Additionally, allowing the bankruptcy to proceed will not cause excessive entanglement with the regulation of the Bank. The restrictions placed on the Bank by its regulators are in place to help strengthen the Bank and help the Bank replenish its capital reserves. Any potential purchaser of the Bank would be subject to the same regulation and be required to recapitalize the bank as a condition to obtaining regulatory approval for control of the Bank. Thus, the bankruptcy would not cause excessive entanglement with the Bank's regulators.[12]

b. Best Interest of Debtor and Creditor

Next, FMB Holdco argues that abstention is proper because bankruptcy is not in the best interest of FMB Holdco or Trapeza because a liquidation of FMB Holdco's stock in the Bank would yield an amount that is less than the face value of the FMB TruPS, destroy the value of FMB Holdco common stock, and end the Bank's existences as a community bank. Section 305 allows abstention when dismissal is in the best interest of both the debtor *and* the creditors. FMB Holdco has argued and presented evidence that its financial condition is improving and that if it continues on its current upward trend FMB Holdco will eventually be able to repay its obligations to Trapeza. Thus, bankruptcy is not in the best interest of FMB Holdco. However, § 305 permits abstention only when dismissal is in the best interest of both the debtor and its creditors. Trapeza represents the sole non-insider creditor of FMB Holdco and has chosen to file

---

[12] The Court notes that counsel for the FDIC appeared at the hearing on the Motion and took no position as to the appropriateness of the bankruptcy.

this bankruptcy.[13] The deferral period under the Notes has given FMB Holdco five years to improve its financial situation and Trapeza has not received any payments under the FMB TruPS during that time. FMB Holdco contracted for a five year deferral period and that period has expired. Trapeza now has the right to seek payment of the amounts it is owed. Trapeza is a sophisticated party and has considered its options carefully and has chosen to seek its remedy in bankruptcy. Trapeza feels that bankruptcy is the proper forum to enforce its rights and the Court will not second guess its business judgment. Accordingly, the Court finds dismissal is not in the best interest of both the debtor and the creditor.

      c. Two Party Dispute

Finally, FMB Holdco argues that this case is a two-party dispute that would be more appropriately decided in a court of general jurisdiction. Some courts have acknowledged that abstention may be appropriate where the bankruptcy action is essentially a two-party dispute and the petitioning creditor can obtain adequate relief in a non-bankruptcy forum. *In re Kennedy,* 504 B.R. at 829 (*citing In re Mountain Dairies, Inc.*, 372 B.R. 623 (Bankr. S.D.N.Y. 2007) and *In re Spade*, 258 B.R. 221 (Bankr. D. Colo. 2001), for the proposition that abstention may be possible in a two-party dispute situation, but ultimately finding that abstention was not proper based on the facts of the case before it.); *see also In re Axl Industries, Inc.*, 127 B.R. at 485. However, § 305 "specifically contemplates a two-party dispute by allowing a single creditor holding a claim greater than $15,325.00 that is not contingent as to liability or subject to a bona fide dispute to file an involuntary petition." *Id.* (citing 11 U.S.C. § 303(b)(2)). Additionally, even those courts

---

[13] Because of the Capital Guaranty FMB Holdco has a current obligation to the Bank of approximately $30,000,000. Thus, the Bank is a substantial creditor of FMB Holdco. Additionally, neither side has made any mention of any creditors other than Trapeza

19

acknowledging the "two party" dispute theory recognize that abstention may be appropriate only where there is another forum available to adequately protect the interest of the parties. *See In re Spade*, 258 B.R. at 234.

Here, there is no dispute that Trapeza could seek to enforce its rights in another forum as the Indenture specifically allows Trapeza to file a "suit" to enforce payment. However, Trapeza chose this Court and jurisdiction in this Court is proper. Dismissal would likely result in a long protracted litigation in a court of general jurisdiction and force Trapeza to wait even longer for any recovery of its investment. FMB Holdco may be correct in that this Court is not the *best* forum, but Trapeza is a proper creditor under § 303(b)(2) and jurisdiction in this Court is appropriate under § 303. Therefore, the Court will not exercise the extraordinary power of abstention because it is not clear to the Court that both the debtor and creditors would be better served by this Court relinquishing jurisdiction, and the court is not certain that Trapeza could obtain adequate relief in another forum.

## **Conclusion**

For the reasons stated in this opinion, the Court will deny the Motion to Dismiss the Involuntary Chapter 7 Petition.